OPINION OF THE COURT
Bernard F. McCaffrey, J.
Plaintiff, Mary Ellen Roche, underwent a Keller bunionectomy on July 18, 1990. The bunionectomy was performed by defendants, Dr. Elliot Udell and Dr. Bernard F. Martin. Plaintiff’s allegations center around an alleged negligent performance of this bunionectomy.
*330 The underlying issue in this medical malpractice action is whether plaintiff may, over the vehement objections of the defendant doctors, conduct their depositions by videotape rather than by regular stenographic means pursuant to CPLR 3113 (b).
It appears that initially CPLR 3113 (b) was silent as to the taking of depositions by recording devices such as audio or videotaping in that the Advisory Committee was concerned that they might not be as accurate and trustworthy as steno-graphically transcribed depositions (First Prelim Report of Advisory Comm on Practice and Procedure, 1957 NY Legis Doc No. 6 [b], at 139). However, over the years familiarity with videotaping has given the courts much more confidence in its accuracy and reliability as a trustworthy, economic and efficient means of taking depositions.
In this respect it is noted that CPLR 3113 (b) was amended in 1977 to provide: "The testimony shall be recorded by stenographic or other means, subject to such rules as may be adopted by the Appellate Division of the department where the action is pending” (italics supplied).
The defendants contend that the authority for the issuance of a protective order can be inferred from the absence of case law allowing videotape depositions in similar circumstances. That their separate research has not disclosed any case in New York allowing a videotape deposition of a defendant who has affirmed his availability to testify personally at trial and also expressed concern that the presence of a videocamera would affect his ability to testify openly and accurately. Further, by expressly providing for a videotape deposition of this defendant where no issue of preservation exists, this court would, in effect, "open the floodgates” in New York.
Defendants further contend that the issue of videotaped depositions should be of special importance to State courts particularly where, as here, CPLR 3113 is far more liberal than comparable rules adopted by the Federal courts. In this respect they refer to rule 30 of the Federal Rules of Civil Procedure in that it only permits videotape depositions by court order if the parties so stipulate.
Defendants assert that CPLR 3103 (a) empowers this court to enter an order safeguarding them from the unreasonable embarrassment and disadvantage of a videotaped deposition. CPLR 3103 (a) expressly provides: "Prevention of abuse. The court may at any time on its own initiative, or on motion of any party or witness, make a protective order denying, limit *331 ing, conditioning or regulating the use of any disclosure device. Such order shall be designed to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts.”
Thus, defendants seek this court to issue an order preventing plaintiffs counsel from videotaping the defendant doctors’ depositions and instead requiring that the depositions be recorded by ordinary stenographic transcription.
Plaintiff vigorously opposes defendants Udell’s and Martin’s applications for a protective order denying plaintiffs notice to videotape their depositions or, alternatively, to impose certain terms and conditions upon the manner in which the videotaped depositions are recorded.
Plaintiff contends that she should not be precluded from availing herself of this superior technology simply because defendants are somewhat camera shy and/or uncomfortable about the prospect of testifying before a videocamera. Further, that in relying upon such flimsy excuses, these defendants either ignore or fail to perceive that they are simply insufficient to overcome a legislative mandate and long-standing policy that videotapes are favored and encouraged.
Plaintiff asserts that when the technology needed to videotape a deposition became available, a number of courts and bar associations supported its use, and notes that the American Bar Association adopted the report of its Special Committee on Automobile Accident Reparations (55 ABA J 374, 375) which included a recommendation that "the use of videotape as a means of presenting the testimony of physicians should be encouraged.”
In addition, in 1978 the National Conference of Commissioners on Uniform State Laws approved the Uniform AudioVisual Deposition Act. (See, Historical Notes to Uniform Audio-Visual Deposition Act §§ 1-10, 12 ULA 10 [1991 Pocket Part].) However, even as of 1992, some 14 years later, only North Dakota and Virginia have enacted it. Neither State has any reported decisions construing the Act (see generally, Berch, A Proposal to Amend Rule 30 (B) of the Federal Rules of Civil Procedure: Cross-Disciplinary and Empirical Evidence Supporting Presumptive Use of Video to Record Depositions, 59 Fordham L Rev 347).
In this respect the court notes the surprising dearth of applicable reported trial or appellate court decisions, current reports or studies as to videotaped depositions.
*332 For example, defendant Martin refers to the fact that plaintiff is able to cite only three cases where the court permitted the use of a videocamera as a means of recording a discovery procedure and, in each of those instances, "preservation” was the controlling factor. The other cases cited by plaintiff only relate to the use of audiotaping, not videotaping. In this regard these aspects of defendant Martin’s memorandum of law are of interest:
"None of the cases cited in plaintiff’s papers directly address the issues raised in the instant action. Plaintiff cites only three cases where the Court actually permitted the use of a videocamera as a means of recording a discovery procedure. However, in each of the three cases, preservation was the motivating factor. In Bichler v Eli Lilly, [50 AD2d 90] [AD Dept. 1,1975], cited on page of 4 of plaintiff’s papers, the court allowed a videotaped deposition of an aged non-party Californian who was willing to return to the jurisdiction for trial. In Rubino v G.D. Searle & Co., [73 Misc 2d 447] [Nassau County, 1973], cited on page 4 of plaintiff’s papers, the Court permitted a videotaped deposition of a non-party witness who had suffered an acute myocardial infarction and would not be available to testify at trial. Mosel by Mosel v Brookhaven Memorial Hospital, [134 Misc 2d 73] [Suffolk Cty., Special Term, 1986], cited on page 3 of plaintiff’s papers, also involves the issue of preservation. In Mosel by Mosel, the Court allowed a videotaped physical examination of a semi-comatose plaintiff who would not be able to testify as to how the physical exam was performed. The three aforementioned cases focus on the need to perpetuate the testimony of otherwise unavailable witnesses. However, as stated in defendant Martin’s Memorandum of Law, there is no need to perpetuate Dr. Martin’s deposition testimony on videotape. Dr. Martin is not aged and is in perfect health. He resides and practices in the jurisdiction and has affirmed his plans to testify personally at trial. In addition, Dr. Martin has objected to the use of a videocamera on grounds that its presence will unnerve him and severely hinder his ability to testify.
"In addition to the three aforementioned cases (Bichler, Rubino and Mosel by Mosel), plaintiff relies on several other cases for support, all of which address the issue of audiotaping depositions. It is the position of defendant, Martin, that those cases do not support plaintiff’s position. Although videotape recorders and audiotape recorders are both electronic recording devices, they are not the same.
*333 "As a means for recording depositions, audiotape is much less intimidating and intrusive. Videotape, unlike audiotape is often distracting, obstructive and at times, encourages witnesses to be less than candid while testifying. Therefore, the Court should consider additional issues (i.e., age, health and domicile of the deponent) before deciding whether a videotaped deposition is warranted.
"In light of the fact that to date, there is no case law (in the Second Department or elsewhere in New York) allowing a videotaped deposition of a defendant who has affirmed his availability to testify at trial and expressed fear that a video-camera will affect his ability to testify, we ask this Court to grant defendant Martin’s cross-motion and deny the plaintiff the opportunity to videotape the depositions of defendant Martin.”
The court notes that both defendants, Udell and Martin, acknowledge that videotaped depositions in civil actions are expressly authorized by statute (CPLR 3113 [b]) and that pursuant to that statute, the Uniform Rules for Trial Courts have been promulgated to regulate the procedures which are utilized when videotaped depositions are conducted (22 NYCRR 202.15).
Thus, plaintiff contends that defendants would have this court believe that this legally sanctioned and long-approved method of recording deposition testimony is an unorthodox form of disclosure that will cause needless prejudice simply by virtue of the fact that the statute exists and is sought to be invoked.
The court will not prematurely rule upon the defendants’ objections that the plaintiff’s motion in seeking videotaped depositions is to utilize them in a prejudicial manner at the time of the trial before the jury. That is, by dramatically arranging a monitor to demonstrate the defendants’ potentially inconsistent answers at trial. As is the case with any deposition, regardless of form, that is a matter for the trial court to determine. In this respect, it is the plaintiff who runs the risk of being unable to utilize the tape, or portion thereof, if it is shown to be objectionable. The rules are clear that no deposition may be put to any use except so far as admissible under the rules of evidence. Thus, the trial court has broad discretion to prevent the utilization of the video deposition as an improper tactic at trial before a jury.
Defendants raise numerous objections as to the manner of *334 the taking of the video deposition, such as: (1) that the court order a simultaneous stenographic transcription of the defendants’ depositions and that the transcript and videotape be provided to defendants’ counsel; (2) that a television monitor be continuously placed in view of all counsel during taping so that potentially prejudicial errors can be jointly monitored, as well as verbal testimony, to enable contemporaneous videotaped objections to be made; (3) review by the court of the video with regard to the estimated effect of the camera upon the unwilling witness, the impression cast by the videotaping of the testimony generally, the camera’s position and subject’s background, the sound quality and objections made during the questions and editing by the court; and (4) an order precluding plaintiffs counsel from operating the videocamera.
To the extent that defendants’ objections and/or applications concerning the conduct of the depositions are either contrary to, or in addition to, the very specific and comprehensive provisions of 22 NYCRR 202.15 (d), they are denied. Plaintiff shall, of course, comply with all aspects of this rule (22 NYCRR 202.15 [c], [d]) in conducting the depositions.
Therefore, if defendants deem any aspects of the procedure objectionable, their proper remedy lies in so stating for the record and thereafter applying for a protective order under CPLR 3113 (b). That statute provides, in pertinent part: "All objections made at the time of the examination to the qualifications of the officer taking the deposition or the person recording it, or the manner of taking it, or to the testimony presented, or to the conduct of any person, and any other objection to the proceedings, shall be noted by the officer upon the deposition and the deposition shall proceed subject to the right of a person to apply for a protective order.”
In order to avoid needless costs and inconvenience to the parties, counsel should attempt to agree upon acceptable ground rules. However, when they are unable to agree the objections should be noted and the examination proceed to a conclusion.
Thus, "[t]he import of subdivision (b) is that these objections just be noted” since "[a]ll such objections, whatever they relate to, are reserved, and the lot of them may be gathered up after the session and made the subject of a single motion for a protective order under CPLR 3103” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3113:2, at 524).
*335 In essence, the rationale of defendants is twofold. Initially, they assert that the demand "amounts to no more than a psychological tactic” to interfere with the testimony of these "camera shy” physicians. Secondly, they argue, at least implicitly, that videotaping is only appropriate, if necessary, to perpetuate testimony.
This is erroneous. Plaintiff has a statutory right, notwithstanding a bashful witness, to employ this methodology, at her expense, provided she complies with the procedural mandates of 22 NYCRR 202.15 (CPLR 3113 [b]). Moreover, although frequently used to perpetuate the testimony of ill or nonresident witnesses, neither court permission nor a showing of "special circumstances” is required (3A Weinstein-KornMiller, NY Civ Prac ¶ 3113.07).
Therefore, defendants’ applications to vacate plaintiff’s demand for videotape depositions are denied. All such depositions shall, however, proceed only in strict compliance with section 202.15.
Specifically, there is no prohibition against plaintiff’s counsel, as an employee of the firm, acting as the videotape operator (22 NYCRR 202.15 [c]). This amounts to little more than turning on and off the camera. That is, the sole function of the operator is to announce the start and stop of the videocamera which is operated by a remote control and remains fixed throughout the proceeding (22 NYCRR 202.15 [d]).
Conversely, an independent officer must be present to swear the witnesses and remain until the completion of their testimony (22 NYCRR 202.15 [d], [f]; Velasquez v Columbia Presbyt. Med. Ctr., 137 Misc 2d 733).
As to defendants’ request that a simultaneous stenographic transcription of the deposition be made by the plaintiff and that they be provided with copies of both the videotape and stenographic transcripts, that application is denied as the court rules specifically provide as follows (22 NYCRR 202.15 [e]): "The parties may make audio copies of the deposition and thereafter may purchase additional audio and audio-visual copies. A party may arrange to have a stenographic transcription made of the deposition at his or her own expense.”
Rather than become involved in unnecessary costly and burdensome motions to the court, counsel and, in particular, their clients, would be better served if counsel would informally agree amongst themselves as to the desirability of *336 having a simultaneous stenographic record and a sharing of costs for same as well as copies of the audio-videotape.
It is time to accept the fact that, unlike Judges’ chambers where the original Underwood Typewriters have only begun to be replaced, even the average "country lawyer’s” office is comparable to a mini-Kennedy Space Center with all its state of the art computers, word processors, faxes, Lexis and, now, the latest in video equipment. Thus, suffice it to say, video depositions are here to stay for, surer than death or taxes, lawyers like to play with new toys.
Finally, defendants may make separate audio copies or stenographic transcripts at their expense or purchase audio or videotape copies from plaintiff at a reasonable cost (22 NYCRR 202.15 [e]). Defendant shall have leave to make further application to the court in this respect if parties cannot agree.